NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1427                                          Appeals Court

COMMONWEALTH  vs.  FOSTER F., a juvenile.


No. 13-P-1427.

Barnstable.     October 9, 2014. - December 10, 2014.

Present:  Berry, Hanlon, & Carhart, JJ.


Indecent Assault and Battery.  Practice, Criminal, Juvenile
    delinquency proceeding, Argument by prosecutor.  Evidence,
    Juvenile delinquency, Authentication of document, Verbal
    completeness.  Witness, Victim.  Internet.


Complaint received and sworn to in the Barnstable County/
Town of Plymouth Division of the Juvenile Court Department on
March 20, 2012.

The case was tried before Mary O'Sullivan Smith.


Rebecca Rose for the juvenile.
Suzanne D. McDonough, Assistant District Attorney, for the
Commonwealth.


CARHART, J.  The juvenile appeals from an adjudication of

delinquency by reason of indecent assault and battery, arguing

that the judge erroneously allowed in evidence Facebook[1] communications and the entire transcript of the victim's Sexual Abuse Intervention Network (SAIN) interview.  The juvenile also argues that the prosecutor's improper closing argument warrants reversal.  We reverse.

Background.  The jury heard the following testimony.  On January 28, 2012, the juvenile met the victim and her friends Gwen and Nancy[2] at a park in downtown Plymouth.  They met to play a "dating game," wherein the juvenile would spend some time with each of the three girls and then decide which girl he wanted to date.  While each of the girls had been communicating with the juvenile through Facebook, they had not met him in person until they all went ice skating some two weeks earlier.  The victim's and the juvenile's Facebook communications included explicit sexual exchanges.

On January 28, the juvenile spent time alone talking with Gwen and, later, Nancy.  The victim testified that, when it was her turn to be alone with the juvenile, she and the juvenile went behind a monument and began kissing on a bench.  At some point, the victim started to walk away, but the juvenile convinced her not to leave.  She returned, they sat on a

---

[1] "Facebook" is a social networking Web site that allows the electronic exchange of both written messages and images.

[2] The names of the victim's friends are pseudonyms.

different bench, and the juvenile began "dry humping" her. The victim tried to push him away, and started walking away again. As the two were walking toward the monument, the juvenile pushed the victim against the monument and started sucking on her ear. He then sat the victim down and pinned her legs. Despite the victim's orders to stop, the juvenile placed his hand inside her pants and inserted several fingers into her vagina. Eventually, the other girls arrived and the juvenile stopped. Gwen testified as the first complaint witness and stated that the victim told her the juvenile had "forcibly fingered [the victim] against her will."

Before trial, the judge held a hearing on the admissibility of the Facebook communications with the juvenile. There was no testimony at the hearing, but the Commonwealth represented that a police report and testimony from witnesses would provide sufficient evidence at trial that the juvenile authored the communications attributed to him. The judge concluded that the Facebook communications satisfied the requirements of the business records exception to the hearsay rule, and were sufficiently authenticated such that the Commonwealth could introduce them at trial.

The Facebook communications, which were admitted at trial, detailed numerous entries attributed to the juvenile after the January 28 incident, including admissions and expressions of

remorse. Subsequent messages also attributed to the juvenile implored the victim to convince her parents not to press charges and repeated his messages of remorse.

On cross-examination, defense counsel confronted the victim with several Facebook entries, made before January 28, in which the victim made sexually explicit comments and appeared to agree to have sex with the juvenile. The victim testified that she had only been kidding and that "it [had been] a joke." Defense counsel also cross-examined the victim on her testimony regarding the events on January 28.

On redirect, the Commonwealth asked the victim, "And it was raised on cross-examination that you went to an interview at the [district attorney's] office?" The victim answered affirmatively. The prosecutor then asked when the interview had taken place, where it had taken place, and who was in attendance. After the victim answered, the prosecutor moved to have the entire transcript of the SAIN interview marked as an exhibit. Over the juvenile's objection, the judge allowed the thirty-four-page document in evidence without any redactions or limiting instructions. Because it is important to our analysis of the admissibility of the transcript, we summarize some of the statements the victim made in the interview.

In the SAIN interview, after responding to initial introductory questions, the victim stated that she had recounted

the details of the alleged sexual assault to several friends.
The victim continued:

> "Oh, yeah, and I called [Sam] before we went to bed,
> because [Sam] knows [the juvenile].  And [Sam] said that
> he's always been like a perv and everything.  Like alls
> [sic] he does is talk about sex and porn and stuff like
> that.
>
> ". . .
>
> "And my friend [Chris] told me that he is like a mad perv
> and everything.
>
> ". . .
>
> "And she like warned me about that, how he's like a wicked
> perv and everything."

Discussion.  The juvenile argues that the judge erroneously
admitted the Facebook communications and the transcript of the
SAIN interview, and that the prosecutor's closing argument was
unsupported by the evidence.  We address each issue separately.

A.  Facebook communications.  Authentication of a document
is a condition precedent to its admissibility.  Commonwealth v.
Siny Van Tran, 460 Mass. 535, 546 (2011).  "The requirement of
authentication . . . is satisfied by a foundation sufficient to
support a finding that the item in question is what its
proponent claims it to be."  Ibid., citing Mass. G. Evid.
§ 901(a) (2011).  "Evidence may be authenticated by
circumstantial evidence alone," and a foundation is adequately
laid "when a preponderance of the evidence demonstrates that the
item is authentic."  Ibid.  Here, "because the relevance and

admissibility of the [Facebook messages] depended on their being authored by the [juvenile], the judge was required to determine whether the evidence was sufficient for a reasonable jury to find by a preponderance of the evidence that the [juvenile] authored" them. Commonwealth v. Purdy, 459 Mass. 442, 447 (2011). A judge may look to "confirming circumstances" that would allow a reasonable jury to conclude the evidence is what its proponent claims it to be. Id. at 448-449. See Mass. G. Evid. § 901(b)(11) (2014).

Here, the Commonwealth offered a police report, the Facebook communications, an affidavit from the Facebook keeper of records, and the anticipated testimony of trial witnesses in support of its request for admitting the Facebook communications. The judge found that the communications themselves provided "adequate 'confirming circumstances' . . . to render the evidence sufficient for a reasonable jury to find by a preponderance of the evidence that the [juvenile] authored the Facebook messages." This finding is supported by the evidence because the juvenile appeared on January 28 to play a dating game with the victim, Gwen, and Nancy, exactly as the person sending messages from the juvenile's Facebook account had proposed. The juvenile's actions served as a basis for concluding that the records are authentic, Commonwealth v. Amaral, 78 Mass. App. Ct. 671, 674 (2011), and there is no

dispute that the juvenile was at the park on that day.  The judge could have concluded, based on the proffered evidence, that it was the juvenile who authored the Facebook messages to the victim.[3]

While we agree that the judge could have found the Facebook messages to be authored by the juvenile, the better practice

---

[3] While we conclude that the Facebook communications were admissible, we are troubled by the admission of entries containing the victim's sexual history, specifically, the victim's statements describing sexual acts she allegedly previously had performed.  Those entries might have been admissible had the defense prevailed at a hearing on their admissibility, but no such hearing occurred.  General Laws c. 233, § 21B, inserted by St. 1977, c. 110 (the rape-shield statute), provides that "[e]vidence of specific instances of a victim's sexual conduct . . . shall not be admissible" except in limited circumstances.  See Mass. G. Evid. § 412 (2014).  A judge must conduct "an in camera hearing on a written motion for admission of [such evidence] and an offer of proof" before deciding whether the evidence is admissible, and must make written findings if allowing the motion.  G. L. c. 233, § 21B.  Neither party requested a hearing or raised the issue before the judge, and we are unable to determine whether some of the victim's Facebook entries should have been excluded.  Even if G. L. c. 233, § 21B, does not apply, a judge can exclude evidence of the victim's sexual history where the primary purpose of the evidence "is to damage an alleged victim's credibility in the eyes of the jury by suggesting promiscuity, and the risk of unfair prejudice outweighs its probative weight."  Commonwealth v. Parent, 465 Mass. 395, 405 (2013).  Admission of the victim's Facebook entries regarding "what she ha[d] done" served no purpose except to undermine her credibility before the jurors, who were considering whether the juvenile committed rape and indecent assault and battery by performing acts nearly identical to those that the victim allegedly had performed in the past.  This case thus demonstrates the importance of adhering to the rape-shield protocol in order that the rights of sexual assault victims be protected.

would have been to instruct the jurors that, in order to consider the Facebook messages as evidence of the statements contained therein, they first needed to find by a fair preponderance of the evidence that the juvenile was the author. Commonwealth v. Oppenheim, 86 Mass. App. Ct. 359, 367 (2014), citing Purdy, 459 Mass. at 447. The judge did not conduct a charge conference before instructing the jury, nor did she ask the attorneys at the end of the charge if they were satisfied. The juvenile did not object to the charge or to the judge's failure to instruct the jury regarding finding that the juvenile authored the evidence in question; therefore, we review to determine whether any error created a substantial risk of a miscarriage of justice. See Commonwealth v. Freeman, 352 Mass. 556, 563-564 (1967); Commonwealth v. Zimmerman, 441 Mass. 146, 150 (2004). See also Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). In light of the other evidence presented at trial, we conclude that it did not.

B. SAIN interview transcript. The Commonwealth sought to introduce the entire SAIN interview transcript under the doctrine of verbal completeness. "Ordinarily, the prior statement of a witness that is consistent with that witness's trial testimony is inadmissible because the statement 'is not made more trustworthy by repeating it.'" Commonwealth v. Aviles, 461 Mass. 60, 75 (2011), quoting from Commonwealth v.

Tennison, 440 Mass. 553, 563 (2003).  However, "[w]hen a party introduces a portion of a statement or writing in evidence[,] the doctrine of verbal completeness allows admission of other relevant portions of the same statement or writing which serve to 'clarify the context' of the admitted portion."  Commonwealth v. Carmona, 428 Mass. 268, 272 (1998), quoting from Commonwealth v. Robles, 423 Mass. 62, 69 (1996).  The doctrine of verbal completeness is limited, Commonwealth v. Crowe, 21 Mass. App. Ct. 456, 479 (1986), and "does not open the door for everything in a statement or document."  Aviles, supra.  "To be admitted, 'the additional portions of the statement must be (1) on the same subject as the admitted statement; (2) part of the same conversation as the admitted statement; and (3) necessary to the understanding of the admitted statement.'"  Ibid., quoting from Commonwealth v. Eugene, 438 Mass. 343, 350-351 (2003).  See Mass. G. Evid. § 106 (2014).

Here, the juvenile cross-examined the victim on the limited issue whether she agreed to go with the juvenile to an area where they could not be seen by the others.  Very little of the remainder of the transcript either explains or clarifies the victim's response to that question.  See Crowe, supra ("[I]t is necessary that the portion of the statement that the [proponent] seeks to introduce qualify or explain the segment introduced by the [the other party]").  Using the SAIN interview transcript to

point out the victim's prior inconsistent statement was a proper manner of impeachment, and defense counsel's cross-examination did not open the door to the unrelated, inadmissible evidence contained in the transcript.[4]

The interview contained character evidence, which generally "is not admissible to prove that [a person] acted in conformity with that character on a particular occasion." Commonwealth v. Bonds, 445 Mass. 821, 829 (2006), quoting from Liacos, Brodin, & Avery, Massachusetts Evidence § 4.4.1, at 130 (7th ed. 1999). See Commonwealth v. Roberts, 378 Mass. 116, 129 (1979) ("[C]haracter may not be used to show criminal propensity"). In the interview, the victim stated three times that different friends told her the juvenile was a "perv." Such comments, in the context of a sexual assault trial where the central issue is credibility, were devastating. While evidence of a juvenile's general reputation may be admissible, see ibid., citing Commonwealth v. Binkiewicz, 342 Mass. 740, 755 (1961), "evidence in the form of private opinions is not." Commonwealth v. Walker, 442 Mass. 185, 198 (2004), and cases cited. The beliefs of three of the victim's friends that the juvenile was a "perv"

_____

[4] The SAIN interview transcript also contained what could be characterized as multiple first complaint statements. While some of those statements independently may have been admissible, the judge, at the very least, should have conducted a hearing on the issue and given an appropriate limiting instruction. See Aviles, supra at 69.

is not evidence of general reputation, ibid., and the fact that defense counsel used the SAIN interview transcript to impeach the victim on a totally unrelated topic does not make the entire transcript admissible. "It involved a different subject, and as such, was not admissible under the rule of completeness." Commonwealth v. Gaynor, 443 Mass. 245, 271 (2005).

Moreover, the interview was replete with the victim's prior consistent statements. "Such statements are generally inadmissible to corroborate in-court testimony or a witness's credibility, but they are admissible when offered in response to a claim of bias, inducement, or recent contrivance." Commonwealth v. Saarela, 376 Mass. 720, 722 (1978). See Mass. G. Evid. § 613(b) (2014). No such claims were made in this case.

Admitting the entire SAIN interview transcript "did not serve to clarify the context of the portion that was admitted during cross-examination or serve to correct any distortion that might have been caused by a fragmented version of events." Gaynor, supra. "We are unable to conclude that no prejudice occurred . . . [as t]he central determination before the jury was the credibility of the" victim. Commonwealth v. Arana, 453 Mass. 214, 228 (2009). The transcript contained inadmissible first complaint statements, prior consistent statements, and

character evidence, and should not have been admitted in its entirety.  We conclude that these errors require reversal.

C.  Closing argument.  The juvenile's final argument is that reversal is required because the prosecutor's statement in closing, that the victim told her friend, "[The juvenile] just raped me," was unsupported by the evidence.  "A prosecutor must limit comment in closing statement to the evidence and fair inferences that can be drawn from the evidence."  Commonwealth v. Kelly, 417 Mass. 266, 270 (1994).  While those particular words were not used by the victim, the argument captured the gist of the victim's testimony.  The statement could have been phrased better; however, we see no error in the argument.

Adjudication of delinquency reversed.

Verdict set aside.