NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1970                                    Appeals Court

COMMONWEALTH  vs.  GEORGE HATZIGIANNIS.

No. 13-P-1970.

Essex.     April 8, 2015. - September 23, 2015.

Present: Cohen, Wolohojian, & Maldonado, JJ.

Indecent Assault and Battery. Evidence, Prior consistent statement, Impeachment of credibility, Cross-examination, Redirect examination. Witness, Credibility, Cross-examination, Impeachment, Redirect examination. Practice, Criminal, Witness.

Complaint received and sworn to in the Lynn Division of the District Court Department on February 23, 2012.

The case was tried before Matthew J. Nestor, J.

Ruth Greenberg for the defendant.
Catherine L. Semel, Assistant District Attorney, for the Commonwealth.

COHEN, J. After a District Court jury trial, the defendant, an oral surgeon, was convicted of indecent assault and battery of a sixteen year old female patient, in violation of G. L. c. 265, § 13H. The charge resulted from a report by

the defendant's surgical assistant that she witnessed the defendant cupping his hand on the patient's breast while the patient was sedated. The sole issue on appeal concerns the admission, over the defendant's objection, of prior consistent statements made by the surgical assistant shortly after the incident. We agree that the admission of these statements was prejudicial error and that, therefore, the judgment must be reversed.

Background. A. The incident. The evidence concerning the episode in question may be summarized as follows. In November, 2010, Orsella Aquino worked as a surgical assistant at Lynn Oral Surgery, one of several offices of an oral surgery practice group in which the defendant was a partner. The defendant rotated into the Lynn office on Monday and Tuesday, every three weeks. Aquino had no difficulties with the defendant; to the contrary, she liked working with him, and found him to be a nice, friendly, and "huggable type of person."

On November 16, 2010, Aquino assisted the defendant when he extracted the wisdom teeth of the patient in question -- a high school student described by Aquino as a "[y]oung, pretty girl." The procedure had been scheduled the previous day when the patient and her mother came in for a consultation. The patient's mother testified that during that initial meeting the defendant sat very close to the patient, touched her on the

knee, and made a comment about her being "attractive."  The patient testified that the defendant was "flirty."

The surgery took place in one of the operatories.  The patient received intravenous sedation, which was common practice, and which was administered by the defendant.  In addition to Aquino, another employee also assisted.  When the surgery was concluded, the other assistant left the room to attend to other tasks, leaving the defendant and Aquino with the patient.

Aquino testified that, at that point, she called the patient's name to wake her, and the patient opened her eyes and asked if the procedure was done; however, Aquino also explained that a patient can be awake while coming out of sedation, but still not fully aware of what is happening.  The patient testified that her first postoperative memory was of waking up in the recovery room.

Aquino proceeded to detach and remove various items that had been used in the patient's care:  the intravenous line, a blood pressure cuff, leads to monitors, and a bib.  After wrapping up the leads and putting them away, Aquino turned and glanced over her left shoulder to look back at the patient.  She saw the defendant standing close to the patient's right side and observed that his right hand was cupping the patient's left breast.  Aquino turned back around because she was "in shock."

She did not think that the defendant saw her looking at him, and said nothing to him. She was afraid that confronting the defendant would cause her to lose her job.

Aquino remained turned around for about "a minute," when the defendant then asked her to leave the room to get ice packs for the patient. Aquino thought this was strange, because he had never asked that a patient receive ice packs in the operatory; typically, ice packs were given to the patient in the recovery room. Aquino left the room only when the defendant became insistent -- asking her two or three more times to get the ice packs. Feeling that she had no choice, she went down the hall to the room where the ice packs were kept. When she returned, the defendant was facing away from the patient and making notes on the chart. Aquino took the patient to the recovery room, and retrieved the patient's mother from the waiting room so she could sit with her daughter.

B. The prior consistent statements. Prior to trial, the Commonwealth moved in limine to admit statements made by Aquino to her office manager, Renee Tatis, shortly after the incident. The Commonwealth proffered that Tatis would testify that Aquino stated, "I just saw [the defendant] touch a patient on the left breast"; that Tatis then asked Aquino, "Are you sure?"; and that Aquino replied, "A hundred percent."

Unpersuaded by the Commonwealth's argument that the statements were admissible as excited utterances, and concerned that this was an attempt to buttress the credibility of Aquino with hearsay, the judge ruled that the statements could not be introduced during the Commonwealth's case-in-chief. He indicated, however, that he would reconsider his ruling if an issue such as fabrication or recent contrivance arose. He also ruled that the Commonwealth could ask Tatis to describe Aquino's demeanor when she (Aquino) approached Tatis.

During cross-examination of Aquino, defense counsel focused on whether she was mistaken about what she saw. He probed inconsistencies between her trial testimony and statements that she made during a deposition conducted one month after the incident, including one statement that she "didn't believe what [she] saw." He also probed her failure to confront the defendant and her decision to leave the patient alone with him while getting the ice packs. On redirect examination, the prosecutor elicited that Aquino was sure that she saw the defendant cupping the patient's breast, even if, at first, she "didn't believe [it]."

Tatis then took the stand and testified that she saw Aquino shortly before lunch, while the patient was still in the recovery room. She described Aquino as "physically shaking and out of breath." Defense counsel cross-examined Tatis briefly,

eliciting that Tatis had no personal knowledge of what occurred in the operatory, that Aquino only came to speak with her after the patient went to the recovery room and not when Aquino was getting the ice packs, and that after Aquino spoke with her, Tatis did not speak with the defendant.

The prosecutor then asked for a sidebar conference, the content of which was unable to be transcribed except for the judge's noting of the defendant's objection.[1]  As a result of the sidebar conference, the Commonwealth was allowed to question Tatis about her conversation with Aquino.  Tatis testified exactly as the Commonwealth had proffered at the motion hearing, stating that Aquino told her that she had seen the defendant touch the patient's left breast; that Tatis said, "Are you sure?"; and that Aquino said, "Yes, one hundred percent."  Tatis also testified that Aquino asked Tatis not to tell anybody because she (Aquino) could not lose her job.  The prosecutor then asked what Tatis did with that information, and Tatis replied that she sent an electronic mail message to her practice

---

[1] Efforts were made to reconstruct this part of the record, but they were inconclusive.  The judge had no recollection of the sidebar conference.  Both the prosecutor and defense counsel remembered that the Commonwealth argued that the cross-examination had opened the door for the Commonwealth to inquire about the statements Aquino made to Tatis.  They also remembered that defense counsel objected, and that the objection was overruled; but neither could recall whether defense counsel requested a limiting instruction.

manager stating that she needed to discuss something very serious with her.

On recross-examination, defense counsel elicited that Tatis did not actually speak to her practice manager for another three days, and that two days after Aquino reported the incident to her, Tatis drafted a "To whom it may concern" letter. In that letter, Tatis stated that Aquino reported seeing the defendant "pulling his hand away" from the patient's breast, rather than touching it, and that the events occurred when Aquino was "going to wake up" the patient, rather than after the patient was awakened. On further redirect, the Commonwealth elicited that Tatis later told an employee of the Department of Public Health that Aquino had reported that she saw the defendant touching the patient's left breast. The Commonwealth then rested its case.

C. The remainder of the trial. The defense was that Aquino made an honest mistake about what she thought she saw, and that it made no sense that the defendant would touch a patient's breast two feet away from the surgical assistant whose job it was to monitor the patient. The defendant testified on his own behalf and denied touching the patient's breast. He also gave examples of instances when it would be necessary for

an oral surgeon to touch a patient on the upper body after a procedure.[2]

During deliberations, the jury asked whether they could see the "To whom it may concern" letter referenced during Tatis's cross-examination. The judge responded that they could not see the letter, as it was not in evidence.[3]

Discussion. A. Admissibility of prior consistent statements. "A prior consistent statement by a witness is generally inadmissible." Mass. G. Evid. § 613(b)(1) (2015). See Commonwealth v. Rivera, 430 Mass. 91, 99 (1999); Commonwealth v. Novo, 449 Mass. 84, 93 (2007). "The rationale for this rule is that ordinarily such statements are 'unnecessary and valueless,' because the statement of a witness is not made more trustworthy by repeating it." Commonwealth v. Novo, supra, quoting from 4 Wigmore, Evidence § 1124, at 255 (Chadbourn rev. ed. 1972). There is, however, an exception to the general rule. "If the court makes a preliminary finding

---

[2] The defendant explained that it might be necessary to touch the shoulder of a patient who emerged from anesthesia confused or scared, to pinch the patient's collarbone to help wake the patient up, to move the patient's chin to reposition the patient's airway, and to adjust the patient's arm to insure that its position would not create a pinched nerve.

[3] The judge also explained that the letter was hearsay and would not be admissible except in limited circumstances, such as if it contained a prior inconsistent statement that would help the jury assess the witness's credibility.

that there is a claim that the witness's in-court testimony is the result of recent contrivance or a bias, and the prior consistent statement was made before the witness had a motive to fabricate or the occurrence of the event indicating a bias, the evidence may be admitted for the limited purpose of rebutting the claim of recent contrivance or bias."  Mass. G. Evid. § 613(b)(2) (2015).  See Commonwealth v. Tennison, 440 Mass. 553, 563 (2003).[4]  However, "use of prior consistent statements should be allowed only with caution, and where the probative value for the proper purpose is clear, because of the ever present danger that the jury will, despite instructions, consider the prior consistent statement as evidence of the facts therein asserted."  Commonwealth v. Darden, 5 Mass. App. Ct. 522, 528 (1977).  See Commonwealth v. Gaudette, 441 Mass. 762, 769 (2004) (prior consistent statement "may be used to rebut the claim of recent fabrication, not to prove the truth of the matter" [citation omitted]).

The defendant argues that the foundation for the exception was not met in this case and hence Aquino's prior consistent statements should not have been introduced.  We agree.  The defendant never insinuated that Aquino's testimony was recently

---

[4] The exception also may apply if the prior consistent statement is made at a time when the motive to fabricate no longer exists.  See Commonwealth v. Aviles, 461 Mass. 60, 69-70 (2011).

fabricated or the product of bias; the suggestion was only that her perception was faulty, and that she was mistaken as to what she thought she saw. Nor was there was any suggestion that Aquino ever had any reason to fabricate her allegation. There was no evidence that she had any animus towards the defendant; to the contrary, the evidence was that Aquino liked the defendant and enjoyed working with him.

The Commonwealth contends that defense counsel's impeachment of Aquino with her deposition testimony suggested that her trial account was either untrue or embellished, and therefore set the stage for the admission of her prior consistent statements. However, "the impeachment of a witness by prior inconsistent statements or omissions does not, standing alone, entitle the adverse party to introduce other prior statements made by the witness that are consistent with his [or her] trial testimony." Commonwealth v. Bruce, 61 Mass. App. Ct. 474, 482 (2004), citing Commonwealth v. Retkovitz, 222 Mass. 245, 249-250 (1915).

The Commonwealth further posits that the defense counsel opened the door to the admission of the statements by eliciting from Tatis on cross-examination that after speaking with Aquino, Tatis did not speak with the defendant. According to the Commonwealth, defense counsel thereby implied that whatever Aquino reported to Tatis was not serious or certain enough to

prompt Tatis to act on it.  Even assuming that this is a fair assessment of the import of the cross-examination, the proper way to rebut it was to ask Tatis on redirect to explain more fully the actions she took after Aquino approached her.  See, e.g., Commonwealth v. Vuthy Seng, 456 Mass. 490, 496-499 (2010). That is, in fact, what the prosecutor did during the next round of recross and redirect.  The disfavored introduction of Aquino's prior consistent statements went beyond what was necessary or appropriate to disabuse the jury of any conceivable misimpression that Tatis was unconcerned by what Aquino had told her.

It bears emphasizing that the statements in question are those of a percipient witness to an alleged sexual assault and not those of a sexual assault victim.  Under the first complaint doctrine a sexual assault victim's first report of the assault is admissible despite the constraints ordinarily placed on evidence of prior consistent statements, see Commonwealth v. King, 445 Mass. 217, 240-243 (2005), and additional complaint testimony may be admitted in the judge's discretion for a variety of independent purposes, including to respond to attempts by the defendant to discredit the victim's testimony, see Commonwealth v. Kebreau, 454 Mass. 287, 297-300 (2009). However, as King makes clear, the first complaint doctrine is specific to sexual assault victims:  "There is a continued need

in sexual assault cases to counterbalance or address inaccurate assumptions regarding stereotypes about delayed reporting of a sexual assault or about sexual assault victims in general." Commonwealth v. King, supra at 240. Accordingly, even though this case is unusual in that the patient was not in a position to voice her own complaint, the ordinary rules governing prior consistent statements remain applicable to the statements of Aquino.

B. Prejudice. Because the defendant objected to the admission of Aquino's statements to Tatis, we review for prejudicial error. See Commonwealth v. Middlemiss, 465 Mass. 627, 631 (2013). An error is nonprejudicial only if we are convinced that it "did not influence the jury, or had but very slight effect." Commonwealth v. Flebotte, 417 Mass 348, 353 (1994) (citation omitted). Here, the central issue before the jury was Aquino's reliability as an eyewitness. Furthermore, it would appear from the jury's request to see the "To whom it may concern" letter during deliberations that they may have been particularly interested in Aquino's conversation with Tatis and how Tatis described it two days later. Finally, while deficiencies in the record leave uncertain whether defense counsel asked for a limiting instruction, the impact of the erroneously admitted evidence surely was amplified by the fact that the jury were not told that they could use the statements

only to evaluate Aquino's credibility, and not for their truth. In these circumstances, we are unable to conclude that there was no prejudice.  See Commonwealth v. Foster F., 86 Mass. App. Ct. 734, 740 (2014).

Conclusion.  The judgment is reversed and the verdict is set aside.

So ordered.