NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-386

COMMONWEALTH

vs.

MENDI PERRY

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A grand jury returned murder indictments against the defendant, Mendi Perry, and her codefendant, Scott Rodrigues, in connection with the October 1, 2017, killing of Dennis Cousineau in Fall River. Evidence at trial showed that Rodrigues struck Cousineau, knocked him to the ground, and continued to beat him. The defendant kicked Cousineau when he was down. Cousineau died days later. A jury found Rodrigues guilty of murder in the second degree and found the defendant guilty of involuntary manslaughter (G. L. c. 265, § 13). On appeal, the defendant claims that the verdict was not supported by sufficient evidence, the judge erred by admitting prior consistent statements on redirect examination of a witness, and the prosecutor misstated facts. We affirm.

<u>Sufficiency of evidence</u>.  In reviewing a claim that the verdict was not supported by sufficient evidence, the "question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Commonwealth</u> v. <u>Latimore</u>, 378 Mass. 671, 677 (1979), quoting <u>Jackson</u> v. <u>Virginia</u>, 443 U.S. 307, 318-319 (1979).  "Because Massachusetts has not defined manslaughter by statute, its elements are derived from the common law." <u>Commonwealth</u> v. <u>Levesque</u>, 436 Mass. 443, 447 (2002). "Involuntary manslaughter is an unlawful homicide unintentionally caused by an act which constitutes such a disregard of probable harmful consequences to another as to amount to wanton or reckless conduct" (citation omitted). <u>Commonwealth</u> v. <u>Ridley</u>, 491 Mass. 321, 330 (2023).  Wanton or reckless conduct "involves a high degree of likelihood that substantial harm will result to another."  <u>Commonwealth</u> v. <u>Welansky</u>, 316 Mass. 383, 399 (1944).

Viewed in a light most favorable to the Commonwealth, the evidence showed that the defendant accompanied Rodrigues when he confronted the victim on the street at about 11 <u>P</u>.<u>M</u>.  Rodrigues yelled at the victim, who was about sixty-two or sixty-three years old and heavily intoxicated.  Rodrigues screamed at the victim, "I told you not to fuck with me.  I told you don't fuck

2

with me."  The defendant joined in the yelling and warned, "Don't fuck with us."  Rodrigues then struck the victim, knocked him to the ground, and rendered him unconscious.  Rodrigues continued "pounding, pounding, pounding on him," and repeatedly screamed, "I told you not to fuck with me."  A witness called out from a nearby apartment, "Hey, hey, he's out.  Coward, you [fucking] coward."  Both the defendant and Rodrigues responded, "Mind your fucking business."  The defendant "kicked [the victim] in the head," and said, "I told you not to fuck with me."  The defendant and Rodrigues left the scene and subsequently told a police officer that they were inside an apartment, heard an argument, went to investigate, and found the victim.  Days later, the defendant died from blunt force trauma to the head.  Through photo arrays, eyewitnesses identified the defendant and Rodrigues as the perpetrators, and the victim's blood matched blood found on Rodrigues's footwear.

Contrary to the defendant's claim, this evidence presented ample support for the verdict of involuntary manslaughter based upon wanton or reckless conduct.  The defendant kicked the victim in the head while he lay helpless on the ground, told an intervening witness to mind her business, and walked away into the night.  Especially given the victim's evident vulnerable condition after being struck multiple times by Rodrigues, the defendant knew or should "have realized the gravity of the

3

danger" posed by kicking the victim in the head and leaving him to suffer.  Welansky, 316 Mass. at 398-399.  The defendant's liability is grounded in her "intent to engage in the reckless conduct, and not [her] intent to bring about the harmful result."  Levesque, 436 Mass. at 452.  Apart from the defendant's liability as a principal, jurors could also infer that the defendant "knowingly participated" with Rodrigues in the attack where they followed the victim down a driveway, confronted the victim, yelled similar profanity-laced warnings, kicked the victim, and misled the police who arrived at the scene.  Commonwealth v. Zanetti, 454 Mass. 449, 467 (2009).  The evidence shows that the defendant was not a mere bystander to an unanticipated fight as she now suggests on appeal; she was a knowing participant in a brutal attack that rendered a man senseless.  Thus, the Commonwealth presented sufficient evidence for the jury to reach a verdict of involuntary manslaughter. Latimore, 378 Mass. at 677.

Redirect examination of witness.  We discern no prejudicial error from the prosecutor's redirect examination of Karen Waring.  Commonwealth v. Smith, 403 Mass. 489, 498 (1988).  On direct examination, Waring testified that through her apartment window she saw the defendant "kicking."  On cross-examination, Waring admitted that her "testimony on two other occasions" indicated that she did not see the defendant kicking, and she

4

further admitted that an excerpt of her statement to the police did not indicate kicking by the defendant. On redirect, over objection, the prosecutor explored details of Waring's prior testimony and statement to the police: she testified before the grand jury, "I saw her kick" she testified in a prior court hearing that she "saw her kicking"; and she told the police that she "saw they were kicking." This redirect examination was proper because the very "purpose of redirect examination is to explain or rebut adverse testimony or inferences developed during cross-examination." Commonwealth v. Hoffer, 375 Mass. 369, 375 (1978). The subjects of Waring's prior testimony and statement to the police were "'opened up in cross-examination, and therefore an exploration of them on redirect was clearly within' the judge's discretion." Commonwealth v. Reed, 397 Mass. 440, 444 n.6 (1986), quoting Hoffer, supra at 375. For the same reason, the judge also properly denied the motion to strike Waring's testimony on redirect. See Commonwealth v. Dominico, 1 Mass. App. Ct. 693, 718 (1974) (motion to strike properly denied where defense counsel "had raised the issue of threats on cross-examination, [and] it was proper to seek clarification on redirect"). To the extent Waring provided conflicting testimony, "it is for the jury to determine where the truth lies." Commonwealth v. Amazeen, 375 Mass. 73, 81 (1978).

5

Given the allegations of recent contrivance, Waring's testimony on redirect was also admissible as prior consistent statements. Prior consistent statements are admissible "where a trial judge makes a preliminary finding (1) that the witness's in-court testimony is claimed to be the result of a recent fabrication or contrivance, improper influence or motive, or bias; and (2) that the prior consistent statement was made before the witness had a motive to fabricate, before the improper influence or motive arose, or before the occurrence of the event indicating a bias." Commonwealth v. Caruso, 476 Mass. 275, 284 (2017). Trial judges have "broad discretion" to admit such statements, and the preliminary finding may be "implied." Id. at 284-285.

Defense counsel repeatedly challenged Waring's testimony that she saw the defendant kicking. On cross-examination, defense counsel asked Waring if her testimony about the kicking "was clearly not the truth" and was in fact a "lie." In addition, defense counsel repeatedly implied that the prosecution had coached Waring before the trial to testify about the kicking: "Did they tell you something to say in the last couple weeks . . . that you didn't say before?"; "Did the prosecutor ever say anything to you about how important this testimony was in connection with this case against my client: You've got to tell the jury that you saw her kicking. Did

6

anyone say anything like that to you?"; "So the first time it came into your mind is when you were specifically asked within the last week by a prosecutor a leading question such as: Did you see the female kick?" Waring repeatedly denied that she had been told what to say. Defense counsel also probed Waring's potential bias: "[D]id you periodically call up the district attorney's office and find out the status of this case?"; "Is it important to you that this case come out a certain way?"; and "I mean you're not here to help the Commonwealth win this case, are you?"

Because defense counsel repeatedly suggested Waring recently contrived her testimony about seeing the defendant kicking due to pressure from the prosecution as well as Waring's own bias, the Commonwealth "was entitled to rebut that suggestion" by introducing her prior consistent statements. Caruso, 476 Mass. at 285. Contrast Commonwealth v. Hatzigiannis, 88 Mass. App. Ct. 395, 400 (2015) (error to admit prior consistent statement where "suggestion was only that [witness's] perception was faulty"). Where, as here, Waring's cross-examination is replete with defense insinuations that she changed her testimony on the eve of trial at the request of the prosecution, explicit findings by the judge on that point are not required. Caruso, supra at 284. We also note that the trial judge's final instructions obviated any potential

7

prejudice from this evidence by providing a limiting instruction regarding the proper use of prior consistent statements.

Misstatements by prosecutor. For the first time on appeal, the defendant claims that the prosecutor made "repeated material misstatements throughout the criminal process." The defendant contends that the prosecutor made two misstatements to the trial judge during arguments on a motion for a required finding of not guilty, and repeated the misstatements during closing argument, at the sentencing hearing, and at the postconviction motion hearing. We agree that the prosecutor misstated the evidence, but we discern no "substantial risk of a miscarriage of justice." Commonwealth v. Freeman, 352 Mass. 556, 564 (1967).

During closing argument, the prosecutor attributed two statements to the defendant during the attack on the victim. The prosecutor argued that as the victim lay on the ground, the defendant yelled, "See, you stupid fucking ass." The testimony, however, indicated that the defendant told Rodrigues, "I don't know why you did him like that." The prosecutor also argued that the defendant told an intervening witness to "[m]ind [her] own fucking business or [she will] be next." The testimony, however, showed that the defendant said, "mind your fucking business. . . . Fuck you."

A prosecutor should not "misstate the evidence or refer to facts not in evidence." Commonwealth v. Kozec, 399 Mass. 514,

8

516 (1987). The prosecutor's summation of the testimony was inaccurate but immaterial. The erroneous reference to "stupid ass" appeared, based on the testimony, a reference to a statement the defendant directed to Rodrigues. It may have actually helped the defense because it suggested that the defendant did not share an intent to commit a crime with Rodrigues. Notably, neither counsel for the defendant nor Rodrigues noted any error, and the judge did not discern any impropriety. "A certain measure of jury sophistication in sorting out excessive claims on both sides fairly may be assumed." Kozec, supra at 517. Also, the judge specifically instructed jurors about the limitations of arguments: "Evidence is also not the opening statements of counsel or the closing arguments of counsel. The attorneys weren't there. They don't know themselves what went on. . . . [T]hey are not sources of evidence themselves." Given the immaterial nature of the misstatement, the lack of any objection, and the instructions of the judge, the prosecutor's error did not result in a "substantial risk of a miscarriage of justice." Freeman, 352 Mass. at 564. We also discern no risk of a miscarriage of justice from the prosecutor's arguments to the judge. There is "nothing in the record to indicate that the judge relied on" the prosecutor's misstatements when deciding the motion for a required finding of not guilty, imposing the sentence, and

deciding the motion for postconviction relief.  Commonwealth v. Rosadilla-Gonzalez, 20 Mass. App. Ct. 407, 415 (1985).  The defendant's "[c]onclusory assertions are insufficient" to show a substantial risk of a miscarriage of justice.  Commonwealth v. Guerro, 14 Mass. App. Ct. 743, 746 (1982).

Judgment affirmed.

By the Court (Vuono, Hand & Hodgens, JJ.[1]),

Clerk

Entered:  May 25, 2023.

---

[1] The panelists are listed in order of seniority.