NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-474

COMMONWEALTH

vs.

JAMAL R. ESCOBAR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial, the defendant, Jamal R. Escobar, was convicted of assault and battery by means of a dangerous weapon, failing to stop for a police officer, leaving the scene of an accident causing property damage, and reckless operation of a motor vehicle. On appeal, the defendant claims the trial judge erred in failing to enter a not guilty finding on the charge of operating a motor vehicle with a suspended license; in allowing the in-court identification of the defendant at trial; in allowing the admission of certain text message evidence; and in instructing the jury on consciousness of guilt. On direct appeal the defendant also claims ineffective assistance of counsel. We agree with the defendant that a finding of not guilty should have entered on the charge of operating a motor

vehicle with a suspended license and, finding no other error, we affirm the remaining convictions.

Background.  We summarize the evidence presented at trial as follows.  At approximately 5:30 P.M. on July 30, 2021, the defendant was observed sitting in the passenger's seat of a motor vehicle in the city of Somerville.  Detective Fernando Cicerone was familiar with the defendant from past interactions.  Detective Cicerone became aware that the defendant had several active warrants and called for backup and waited for their arrival before attempting to stop the car.  In the meantime, the car stopped at a residence and the defendant, who was now the sole occupant of the car, drove in the direction of Route 28.  Detective Cicerone activated his cruiser lights to stop the car, but the defendant refused to stop and continued onto the highway at a high rate of speed.  During the pursuit, Sergeant Daniel Rego, who was driving an unmarked cruiser, drove parallel to the defendant's car to force him to stop.  While the two cars were parallel to one another, the defendant looked directly at Sergeant Rego, then swerved his car into Sergeant Rego's unmarked police vehicle and rammed into it.  The defendant then continued to flee and drove in an erratic manner for about another mile and proceeded to travel off the highway ramp at approximately eighty miles per hour.  Due to safety concerns, the police stopped the pursuit.

2

About one month later in Attleboro, several officers, including Detective Cicerone, effectuated an arrest of the defendant at his residence.  The defendant was found in the basement of the home and taken into custody.  His license, wallet and cellphone were seized.  After a search warrant was issued, Detective Cicerone "was able to view the contents of" the cellphone, which included several text messages about the defendant's interaction with the police on July 30th.[1]  One message sent July 31st read "I went on a highspeed chase." Another message indicated that he crashed into the police, and another sent on the day of the crash stated, "[I'm] going to deny it."

At trial, the defendant did not present any evidence in his defense.  Instead, his counsel argued that while the defendant made some "incredibly stupid" decisions that day and admitted that he did run from the police, he did not intentionally crash into the police cruiser.

Discussion.  The defendant makes five arguments.  We address each argument in turn.

1. Operation of a motor vehicle after suspension.  After the Commonwealth rested its case, the prosecutor realized that

---

[1] There is no doubt that the evidence from the defendant's text messages was damning.  Texts from the defendant's phone included the following message:  "I took that shit on a highspeed chase on their jurisdiction."

3

she had failed to introduce evidence that the defendant's license to operate a motor vehicle was suspended. She requested dismissal and the judge and defense counsel both agreed. On appeal, the defendant contends that jeopardy had attached and that he was entitled to a finding of not guilty on this charge because the jury had been empaneled, sworn in, and heard the entirety of the Commonwealth's case. The Commonwealth agrees that the defendant was entitled to a finding of not guilty. See Mass. R. Crim. P. 25 (a), as amended, 420 Mass. 1502 (1995). We also agree and therefore vacate the entry of dismissal and order that a finding of not guilty be entered as to this charge.

2. Police familiarity with the defendant and active warrants. Prior to trial, the Commonwealth filed a motion in limine pursuant to Commonwealth v. Crayton, 470 Mass. 228 (2014), to have Detective Cicerone identify the defendant in court because he was not arrested at the scene of the high speed chase and because the detective was familiar with him from past interactions. The motion was allowed, over the defendant's objection, and the judge cautioned the Commonwealth to limit the questioning about the detective's familiarity with the defendant. Defense counsel did not object to Detective Cicerone's testimony that the reason for the stop of the defendant was because he had several active warrants.

4

We review the judge's decision to admit this evidence for an abuse of discretion. See Commonwealth v. Collins, 92 Mass. App. Ct. 395, 397 (2017). The defendant claims that the judge erred in admitting the testimony of past "interactions" with police and the defendant's active warrants because it allowed the jury to hear evidence about the defendant's prior bad acts and the prejudicial effect outweighed its probative value.

There was no abuse of discretion or clear error in the allowance of the testimony relating to Detective Cicerone's knowledge of the defendant or the testimony regarding the reason for the motor vehicle stop. Here, the trial judge carefully considered the motion in limine prior to its admission and set limitations to reduce or minimize the risk of prejudice to the defendant. The prosecutor respected those limitations and did not linger on this evidence or highlight it to the jury. In fact, the judge ensured that the jury would not be unduly prejudiced by appropriately limiting Detective Cicerone's testimony to only the fact that he had multiple interactions with the defendant and that, as a result, he was familiar with the defendant. Moreover, to explain the reason that the defendant was being stopped by the police, and thereby to prevent confusion, the Commonwealth was permitted to elicit the limited testimony at issue to provide the jury "as full a picture as possible of the events surrounding the incident

5

itself" (quotation omitted).  Commonwealth v. Phim, 462 Mass. 470, 477 (2012).

3.  Consciousness of guilt jury instruction.  At the close of the case, the Commonwealth requested that the judge instruct the jury on consciousness of guilt and the defendant did not object.  We review for a substantial risk of miscarriage of justice.  Commonwealth v. Diaz, 100 Mass. App. Ct. 588, 599 (2022).

A consciousness of guilt instruction is warranted where "there is an inference of guilt that may be drawn from evidence of flight, concealment, or similar acts."  Commonwealth v. Morris, 465 Mass. 733, 738 (2013), quoting Commonwealth v. Stuckich, 450 Mass. 449, 453 (2008).  "[A] judge need only assess the relevancy of the evidence" in order to determine whether to instruct on consciousness of guilt.  Morris, supra. Here there was no error in providing the jury with this instruction as the jury heard evidence of the defendant driving at a high rate of speed away from two police cruisers with lights and sirens activated attempting to effectuate a stop. The defendant looked directly at Sergeant Rego, who was motioning the defendant to pull over, and then rammed his car into the cruiser and continued driving at a high rate of speed. Therefore the instruction was relevant to the evidence adduced at trial.

6

The defendant claims that the consciousness of guilt instruction should not have been given because the defendant was already fleeing the police before the collision occurred and, even if it was warranted, the judge failed to instruct the jury as to which counts they could consider this instruction.[2] While the jury were free to agree with the defendant's position regarding when he attempted to flee from police, it was up to the jury to determine if the defendant's flight was at all

---

[2] The judge instructed the jury that:

"You have heard evidence suggesting that the defendant fled from the police after the alleged crash on Mystic Ave[nue] in Somerville. The defendant may have fled after he discovered that he was about to be arrested for the offense for which he is now on trial. If the Commonwealth has proved that the defendant did in fact flee from the police after the alleged crash on Mystic Ave[nue] in Somerville, you may consider whether such actions indicate feelings of guilt by the defendant and whether in turn such feelings of guilt might tend to show actual guilt of those charges. You are not required to draw such inferences and you should not do so unless they appear to be reasonable in the light of all the circumstances of this case. If you decide that such inferences are reasonable, it will be up to you to decide how much importance to give them, but you should always remember that there may be numerous reasons why an innocent person might do such things. Such conduct does not necessarily reflect feelings of guilt. Please also bear in mind that a person having feelings of guilt is not necessarily guilty. In fact, for such feelings are, are sometimes found in innocent people.

"Finally, remember that standing alone, such evidence is never enough by itself to convict a person of a crime. You must not find the defendant guilty on such evidence alone, but you may consider it in your deliberations along with the other evidence."

7

connected to his feelings of guilt or not. "[W]hen there are multiple possible explanations for a defendant's flight, it is for the jury to decide if the defendant's actions resulted from consciousness of guilt or some other reason." Morris, 465 Mass. at 738, quoting Commonwealth v. Prater, 431 Mass. 86, 97 (2000).

Next, the defendant argues that even if it was not error to instruct on consciousness of guilt, the judge erred by failing to clarify to the jurors that the instruction did not apply to some of the charges. We disagree. First, the judge carefully instructed the jurors on consciousness of guilt during his specific instructions relating to the charge of operating a motor vehicle recklessly. Second, there can be no substantial risk of miscarriage of justice where the defendant conceded in his opening and closing that he failed to stop for a police officer and that he drove recklessly. Given this admission and a lack of any evidence to support the defendant's present suggestion that the outcome would have been different with clarification, we perceive no substantial risk of a miscarriage of justice. Commonwealth v. Lapointe, 55 Mass. App. Ct. 799, 806 (2002) (a "mere possibility of a different outcome" is not sufficient to hold there was a substantial risk of miscarriage of justice).

4. Authentication of text messages. Next, the defendant claims error in the admission into evidence of text messages

from the defendant's cellphone because they were not properly authenticated. At trial, Detective Cicerone, although he was unsure exactly how the messages were extracted from the defendant's cellphone, testified to several incriminating text messages that were extracted from the defendant's cellphone and sent by the defendant. Since the defendant did not raise this particular objection at trial, we review for a substantial risk of a miscarriage of justice. Commonwealth v. Quinn, 469 Mass. 641, 646 (2014).

"Before a communication may be admitted in evidence, the judge must make a determination regarding its authenticity; that is, the judge must determine whether there exists sufficient evidence that, if believed, a reasonable jury could find by a preponderance of the evidence that the communication in question is what it is purported to be." Commonwealth v. Lopez, 485 Mass. 471, 477 (2020). Authentication of digital evidence "is a condition precedent to its admissibility." Commonwealth v. Meola, 95 Mass. App. Ct. 303, 307 (2019), quoting Commonwealth v. Foster F., 86 Mass. App. Ct. 734, 737 (2014). "As with other types of communication, the authentication of text messages may be accomplished by way of direct or circumstantial evidence, including its [a]ppearance, contents, substance, internal patterns, or other distinctive characteristics" (quotation omitted). Commonwealth v. Welch, 487 Mass. 425, 441 (2021).

9

There was no error by the trial judge in determining that a sufficient showing of authentication had been made. At trial, Detective Cicerone testified that the defendant's cellphone was seized and that a search warrant was obtained for him to review the contents of the phone. He further testified that he examined the photographs, videos, and messages on the defendant's phone. The prosecutor showed the detective a series of text messages and Detective Cicerone recognized those messages as coming from the defendant's phone that had been seized. This was sufficient evidence that, if believed, a reasonable jury could find by a preponderance of the evidence that the text messages in question were messages sent from the defendant's phone. Accordingly, the allowance of these text messages was not error because they were properly authenticated.

5. Claim of ineffective assistance of counsel. In reviewing the defendant's claim of ineffective assistance of counsel, we determine whether counsel's behavior fell "measurably below that which might be expected from an ordinary fallible lawyer" and, if so, whether counsel's failures "likely deprived the defendant of an otherwise available, substantial ground of defense." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). The burden rests with the defendant and if the decisions of trial counsel were "tactical or strategic" then the defendant must establish that trial counsel's actions were

10

"manifestly unreasonable." Commonwealth v. Shanley, 455 Mass. 752, 768 (2010) (quotation omitted).

It is well established that the "preferred method" for raising a claim of ineffective assistance of counsel is for counsel to file a motion for new trial.[3] Commonwealth v. Zinser, 446 Mass. 807, 810 (2006). In other words, "an ineffective assistance of counsel challenge made on the trial record alone is the weakest form of such a challenge because it is bereft of any explanation by trial counsel for [their] actions and suggestive of strategy contrived by a defendant viewing the case with hindsight." Id. at 811, quoting Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002).

A review of the record does not support the defendant's claims of ineffective assistance of counsel. Simply stated, the defendant has failed to establish that trial counsel's actions were, given the strength of the Commonwealth's case, anything but strategic.

Conclusion. For the reasons stated above, we vacate the order dismissing the charge of operating with a suspended license (count 5) and remand for entry of a not guilty finding

---

[3] The defendant claims that a motion for a new trial would have been futile because trial counsel is deceased. Although the intervening death of trial counsel certainly may have complicated any motion for a new trial, we disagree with the defendant's argument that it rendered such a motion futile.

11

as to that charge only.  In all other respects the judgments are affirmed.

So ordered.

By the Court (Milkey, Walsh &
  Smyth, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered:  August 18, 2023.

---

[4] The panelists are listed in order of seniority.